IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 11-cv-02972-JLK

JOEL M. SMITH and
GLOBAL GENERATOR SERVICE, INC., a Colorado corporation,

        Plaintiffs,

v.

BALDOR ELECTRIC COMPANY, a Missouri corporation,

        Defendant.

___

FINDINGS OF FACT AND CONCLUSIONS OF LAW
RE: PLAINTIFF'S EQUITABLE CLAIMS
___

Kane, J.

       Plaintiffs Smith/Global sued defendant on an alleged contract seeking damages for breach or in the alternative for equitable relief. The contract claim was tried to a jury that on May 23, 2014 returned a verdict in favor of the defendant. The equitable claims were reserved for decision by the court. The following recites my findings of fact and conclusions of law resulting in a denial of equitable relief.

       The jury verdict answered specific interrogatories. Having listened to the same testimony and reviewing the same exhibits admitted at trial, I adopt the jury's findings as my own. They are: (1) that a contract existed between Smith/Global on the one hand and Baldor on the other in which Baldor agreed to sell products to Northland Power Services only through Smith/Global; (2) that Aggreko LLC purchased Northland's business in December 2010, but the parties did not expressly agree at that time to extend their contract to sales to the new purchaser.

1

Smith/Global was unsuccessful in its assertion that its agreement to be the exclusive source for Baldor equipment to Northland extended through Northland's acquisition by Aggreko. While the averred extension had always seemed improbable, there was a factual dispute based on Smith's uncorroborated testimony saying an extension was included in the oral contract and a number of other witnesses saying it was not. In my January 8, 2013 order denying Baldor's motion for summary judgment, I wrote:

> The decision to deny Baldor's motion is a close one, but in the end it was the timing of the parties discussions in late 2010 and early 2011 that convinced me to allow jurors to assess the parties' intent with regard to their arrangement rather than take that decision from them. . . . I remain unconvinced of the legal basis for Smith's claim to exclusive sales rights that survived [Northland's] sale to Aggreko. . . . . A special verdict form will be used, and in this case will include a series of special interrogatories designed to elicit specific findings regarding the existence of a contract between the parties and, if a contract was formed, what its specific terms were.

Had the jury returned a contrary finding, I would have respected it, but it did not. Rather, it reinforced my earlier skepticism and supports my findings herein.

At relevant times to this lawsuit Baldor was in the business of, among other activities, making and selling electric generators. Joel Smith through his wholly owned corporation, Global Generator Source, Inc., was in the business of selling new and used construction equipment, including electric generators used in the oil fields. A third company, Northland Power Services, was in the business of mounting generators on to trailers and leasing them to customers as a portable and remote method for generating electricity at oil and gas drilling sites. In 2009 Global was engaged to sell Northland's used generators and eventually Northland asked Global to sell it some new generators. Northland was already aware of Baldor and its generators and had previous dealings with another company, T.W. Enterprises, Inc., (TWE) concerning

such purchases.

In 2010, TWE and Northland personnel toured the factory for Baldor's supplier of generator engines in Wood Dale, Illinois, and toured Baldor's generator factory in Oshkosh, Wisconsin, where they met with Baldor's employees. Baldor's Rocky Mountain District Manager, Tim Gargulio, attended these meetings as well. Mr. Gargulio was the part owner of Rocky Mountain Baldor, Inc. (RMBI), which is a corporation separate from Baldor and functions as Baldor's sales agency in the Rocky Mountain sales territory that is roughly equivalent to the Mountain Time Zone.

The evidence presented two reasons, pricing and personalities, for Northland electing to deal through Smith/Global which then requested information through Baldor's website and became Northland's source for new generators. Global arranged a meeting with Northland and Baldor. After the meeting Global ordered generators from Baldor and re-sold them to Northland at a mark-up.

Smith claimed that he did not disclose Northland's identity to Baldor until Baldor promised that Smith/Global would be the exclusive dealer for the account. Baldor denied making Smith/Global the exclusive dealer, but agreed that it would deal with Northland through Smith/Global.

In December 2010, Aggreko – an international company headquartered in Scotland with offices in Louisiana and elsewhere – purchased Northland's business. Aggreko was already familiar with Baldor and did not seek out business with Baldor as a result of any efforts by Smith/Global. After Aggreko bought Northland's business, Baldor sold generators directly to Aggreko not only for the business previously owned by Northland, but for other locations both in

the United States and elsewhere. Aggreko did not go through Smith/Global for any of these purchases and, in fact, had insisted on dealing directly with Baldor for all of its purchases without the use of any middleman.

In the pretrial order and at the beginning of the jury trial, Smith/Global asserted that it had an exclusive agency to sell Baldor equipment to Northland <u>and its successors</u> as well. There was no written agreement. When faced with the prospect that an oral contract with an unending right to compensation was unenforceable under the Colorado Statute of Frauds (and, moreover, that its claim of exclusivity was (1) contradicted by Northland's having purchased generators from other distributors during the time it did business with Smith/Global and (2) ambiguous as to whether it applied only to Northland's account or to all of any successor's purchases) Mr. Smith revised his testimony to claim the oral contract applied only for one year and was limited to purchases by Aggreko for the business it acquired from Northland and not to any other purchases within the Rocky Mountain territory, the rest of the United States, or elsewhere. No matter: There is no such thing in Colorado law as "an exclusive right to sell" as to a single customer, much less to a customer's accounts or business acquired by purchase.

From the beginning of its acquisition of Northland, Aggreko made it clear that it had not and would not deal through distributors or middlemen; that it would only deal directly. As a high-volume buyer, Aggreko could obtain favorable pricing on its own. Further, the distribution of its equipment and the customized units it required caused Aggreko to prefer to deal directly with the manufacturers on numerous technical issues. Aggreko was already familiar with Baldor, toured its facilities and did not require any information or assistance from Smith/Global. As Aggreko employee Hale Boudreaux testified, "We're Aggreko – we don't go through

distribution." He stated unequivocally that Aggreko would only purchase directly from a manufacturer such as Baldor and he so advised Smith/Global in response to an email sent on April 1, 2011. From that time forward Smith/Global spent no time or money promoting Baldor generators to Aggreko. The facts were undisputed that Smith/Global played no part in Aggreko's decision to purchase Baldor generators. Baldor had no obligation to decline Aggreko's orders or insist that Aggreko buy its generators through Smith/Global.

When Aggreko acquired Northland, Mr. Gargulio of RMBI tried to help Smith/Global obtain the Aggreko business because he wanted that account to stay in RMBI's territory. If Aggreko bought directly from Baldor there would be no prospect of RMBI handling the purchases. Mr. Gargulio's efforts, however, were immediately rebuffed by Aggreko.

Aggreko purchased generators from Baldor at a price lower than Smith/Global had paid for the products when it made purchases and resold them to Northland. There was no basis for Smith/Global to secure any profit much less the profit it had enjoyed in its sales to Northland. The testimony presented by Smith/Global as to its anticipated profits was entirely speculative and wistful.

## CONCLUSIONS OF LAW AND EQUITY

### I.

*Quantum meruit* and unjust enrichment are often names for the same cause of action. *See Dudding v. Norton Frickey and Associates*, 11 P.3d 441 (Colo. 2000). The elements are: (1) the defendant received a benefit; (2) at the plaintiff's expense; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying. It is the plaintiff's burden to prove these elements. Smith/Global was not the efficient or procuring cause of any benefit

obtained by Baldor in its sales to Aggreko.  As adopted by me, the jury found there was a contract between Smith/Global and Baldor in which Baldor agreed to sell its products to Northland through Smith/Global, but the jury specifically found that the parties did not extend their contract to include sales (either in perpetuity or for one year only) to Aggreko or any other successor to Northland.  Therefore, Smith/Global cannot assert a claim for *quantum meruit* or unjust enrichment against Baldor.  Even if a claim were to be recognized, Baldor received no benefit in its sales to Aggreko from Smith/Global at Smith/Global's expense and the unequivocal decision of Aggreko to buy directly from Baldor or not at all means that no set of circumstances exist that would make it unjust for Baldor to realize its sales to Aggreko without paying Smith/Global.

## II.

As to the Third Claim for Relief based on promissory estoppel, Smith/Global has failed to meet its burden of proving that (1) there was a promise; (2) that Baldor reasonably expected to induce action or forbearance of a definite and substantial character on the part of Smith/Global; (3) that Smith/Global in fact reasonably relied on the promise to its detriment; and (4) the existence of circumstances such that injustice can be avoided only by enforcement of that promise.  *Cherokee Metro Dist. v. Simpson*, 148 P.3d 142 (Colo. 2006). The jury found, and I adopt the finding as my own, that there was no relevant promise made by Baldor to Smith/Global.  Without such a promise, there was nothing upon which Smith/Global could rely.  Moreover, the evidence was clear that Smith/Global expended little time, money or effort in attempting to secure Aggreko as a customer and clearly not worth an equitable award even if there were such a promise.

III.

The remaining claims for "Wrongful Withholding" and "Accounting" are not cognizable claims. There is no cause of action for payment of prejudgment interest in Colorado except for cases involving personal injury. An "Accounting" is not a cause of action; it is a remedy that calls for a fiduciary to explain and justify how it has maintained the money or properties of a beneficiary. Baldor is not and never has been a fiduciary of Smith/Global. The amounts received by Baldor from Aggreko were rightly the subject of discovery in pursuing damages for the alleged breach of contract, but clearly not the basis for an accounting.

CONCLUSION.

Judgment shall enter for the Defendant Baldor Electric Company on the Smith/Global's equitable claims and such claims are DENIED for the reasons stated and DISMISSED with prejudice. The Defendant shall have judgment for its costs herein expended as provided by law upon application being duly made.

Dated this 4th day of November, 2014.

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE